O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **CARLOS D. ESTRADA,** | ) | NO. EDCV 07-01226-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on October 9, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for a period of disability ("POD") and disability insurance benefits ("DIB"). On December 17, 2007, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on August 6, 2008, in which: Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding the case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his application for a POD and DIB on October 3, 2005. (Administrative Record ("A.R.") 17-18, 62.) Plaintiff claims to have been disabled since June 3, 2005, due to: left shoulder and left hand injury; arthofibrosis of left wrist, left hand, index, middle, and ring fingers; and left shoulder rotator cuff weakness.[1] (A.R. 66.) He has past relevant work experience as an auto mechanic. (A.R. 27.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 17-18.) On May 17, 2007, Plaintiff, who was assisted by a Spanish interpreter and not represented by counsel, testified at a hearing before Administrative Law Judge Jay E. Levine ("ALJ"). (A.R. 213-31.) On May 25, 2007, the ALJ denied Plaintiff's claim (A.R. 22-29), and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision (A.R. 3-5).

**SUMMARY OF ADMINISTRATIVE DECISION**

In his May 25, 2007 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 3, 2005, and that he has the following severe impairments: left shoulder rotator cuff with acromioclavicular impingement; and ulnar minus variance, left wrist and hand with scapholunate avascular necrosis.[2] (A.R. 24.)

---

[1] In May 2005, Plaintiff sustained an industrial injury when an automobile transmission fell on his left arm. (A.R. 26.)

[2] Impingement occurs when the rotator cuff tendons are squeezed and rub against bone. Avascular necrosis refers to having a poor blood supply or lacking in blood vessels. *See* http://www.webmd.com.

The ALJ determined that Plaintiff has the residual functional capacity to:

> perform sedentary work. Specifically, [Plaintiff] can lift a maximum of 10 pounds. Out of an 8-hour period, he can stand and/or walk for 2 hours and sit for 6 hours. With the left upper extremity, nonexertional limitations include no pushing/pulling, only occasional fine fingering, and no power gripping. [Plaintiff] cannot climb or crawl but can occasionally stoop, kneel, and crouch.

(A.R. 25.)[3]

Based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found that Plaintiff was not able to perform his past relevant work as an auto mechanic but could perform jobs, such as a charge account clerk, systems surveillance monitor, and cashier, that exist in significant numbers in the national economy. (A.R. 27-28.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the time period in issue. (A.R. 28.)

///
///
///

---

[3] "Sedentary" work involves lifting no more than ten pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools; a sedentary job is defined as one which involves sitting, although a certain amount of walking and standing is often necessary. 20 C.F.R. §404.1567(a).

3

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff alleges the following four issues: (1) whether the ALJ properly considered the opinion of Plaintiff's treating physician; (2) whether the ALJ properly developed the record; (3) whether the ALJ properly considered third party testimony; and (4) whether the ALJ posed a complete hypothetical question to the vocational expert. (Joint Stipulation ("J.S.") at 2-3.)

**I.   The ALJ Failed To Develop The Record Adequately, And To Consider Properly The Opinion Of Plaintiff's Treating Physician.**

It is axiomatic that the ALJ has an affirmative duty to develop the record in certain circumstances. *See* Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ's duty to develop the record is triggered by "ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Where, as

here, the claimant appears at a hearing without counsel, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985).

Further, a treating physician's conclusions "must be given substantial weight." Embry v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). An ALJ's failure to provide such reasons is reversible error. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); *see also* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Cotten v. Bowen, 799 F.2d 1403, 1408-09 (9th Cir. 1987).

The first two issues presented are interrelated and highlight the ambiguity in the ALJ's decision that must be clarified. First, it is unclear to the Court whether -- and for what reasons and to what extent -- the ALJ tacitly accepted Plaintiff's treating physician's opinion or rejected it. On the one hand, the ALJ asserts that his assessment of Plaintiff's residual functional capacity "is not inconsistent with the treating physician's work restriction." (A.R. 27.)[4] On the other hand,

---

[4] On February 23, 2006, Plaintiff's treating physician, Khalid B. Ahmed, M.D., examined Plaintiff and opined that he was temporarily totally disabled and no modified work was available given the following work restrictions: "no use of the left arm, no up to or over the shoulder use of the left arm, no repetitive motion of the neck or use of neck in fixed position, and no bending, stooping, and lifting." (A.R.

6

in view of Plaintiff's treating physician's May 1, 2007 opinion that Plaintiff is "temporarily totally disabled from work" (A.R. 197), it is not surprising that both parties address the propriety of the ALJ's "rejection" of Dr. Ahmed's opinion.[5] (J.S. at 3-7.) Either way, the ALJ's failure to provide a clear and adequate analysis of how he reached his ultimate disability determination constitutes error. The Commissioner's regulations plainly state that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(d)(2). Accordingly, remand is appropriate to allow the ALJ the opportunity to set forth legally sufficient reasons for either accepting or rejecting Dr. Ahmed's opinion.

Critically, before the ALJ can properly accept or reject Dr. Ahmed's opinion, the ALJ must develop the record to establish clearly what Dr. Ahmed's opinion of Plaintiff's physical limitations and work restrictions actually was as of May 2007. Indeed, the ALJ's *assumption* that, in his May 1, 2007 opinion, "Dr. Ahmed did not modify

---

210.) On May 1, 2007, Dr. Ahmed re-examined Plaintiff and opined that Plaintiff continued to be temporarily totally disabled pending arthroscopic surgery with an open partial lateral claviculectomy, and would continue to be temporarily totally disabled for the next six weeks pending treatment and care. (A.R. 196-97.)

[5] Indeed, despite the ALJ's above-quoted statement that his assessment of Plaintiff's residual functional capacity "is not inconsistent with the treating physician's work restriction" (A.R. 27), the Commissioner attempts to justify the ALJ's "disregard" of Dr. Ahmed's opinion without "setting forth specific, legitimate reasons for doing so" by arguing that the ALJ could disregard Dr. Ahmed's opinion as "***inconsistent***" with the opinions, "based on independent clinical findings," on which the ALJ properly relied. (J.S. at 6.) Thus, the Commissioner's rationale in support of the ALJ's conclusion regarding Plaintiff's residual functional capacity is directly at odds with the ALJ's own, limited statement of his rationale for that residual functional capacity.

7

[Plaintiff's] restrictions from February 23, 2006 and made no mention of work restrictions" (A.R. 27) has been challenged by Plaintiff's counsel, and thus, the ambiguity regarding Plaintiff's work restrictions, as assessed by his treating physician in May 2007, must be clarified. Dr. Ahmed's opinion regarding Plaintiff's limitations bears directly on the extent to which Plaintiff is able to engage in full-time work and must be addressed as the opinion of Plaintiff's treating physician. The ALJ should have re-contacted Dr. Ahmed for clarification and explanation of Plaintiff's work restrictions as of May 2007. The ALJ's failure to develop the record in this regard constitutes error. *See* 20 C.F.R. § 404.1512(e)(duty to re-contact treating physician); *see also* Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(requirement that the Commissioner re-contact treating sources is triggered when the information from the treating sources is inadequate to make a determination regarding disability).

Accordingly, remand is necessary for further development of the record and for proper assessment of the opinion of Plaintiff's treating physician.

**II.  The ALJ's Failure To Address The Third Party Lay Statements Of Bonnie Villa Does Not Warrant Reversal.**

By his third issue, Plaintiff contends that the ALJ committed reversible error by failing to acknowledge and discuss a May 2, 2006 "Function Report Adult Third Party" questionnaire (the "Questionnaire") (A.R. 106-13) submitted by Bonnie Villa, whose relationship to Plaintiff is stated on the Questionnaire as "NONE." (A.R. 106.) For the

following reasons, the Court disagrees.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence." Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). When an ALJ fails to discuss competent lay testimony, a reviewing court cannot find harmless error "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

In the instant case, there is no evidence that Ms. Villa was a competent witness. The majority of her responses in the Questionnaire are overbroad, lack foundation, and conflict with the evidence of record. She is not related to Plaintiff, nor does she indicate how long she has known him or how often she sees him, if ever. For example, when asked what Plaintiff was able to do before his illnesses, injuries, or conditions that he cannot do now, Ms. Villa incredibly responded "[e]verything." (A.R. 107.) Similarly, when asked what household chores Plaintiff is able to do, Ms. Villa responded, "[h]e can't do nothing." (A.R. 108.) Yet, in response to questions regarding how much time Plaintiff requires to complete household chores, and how often he does each of these things, Ms. Villa stated, "don't know." (A.R. 108.) When asked what hobbies and interests Plaintiff has, Ms. Villa responded "[d]on't know." (A.R. 110.) In response to whether there have been any

9

changes in Plaintiff's social activities since his illnesses, injuries, or conditions have begun, Ms. Villa stated, "[h]e don't go nowhere." (A.R. 111.)  In response to whether Plaintiff is able to pay bills and count change, Ms. Villa stated, "[n]o," and explained that Plaintiff "do[es] not know how," although the record makes plain that Plaintiff "handles bill[s] [and] cash appropriately."  (A.R. 109; *cf* A.R. 169.) When asked whether Plaintiff can drive, Ms. Villa responded that she does "not know," although it is clear from the record that Plaintiff can, and does, drive.  (A.R. 109, *Cf* A.R. 169.)  When asked whether Plaintiff requires the assistance of crutches, walker, wheelchair, cane, brace/splint, glasses/contact lenses, artificial limb, hearing aid, and/or artificial voice box, Ms. Villa responded, "[d]on't know." (A.R. 112.)

Moreover, in the "Information About Abilities" check-box section, Ms. Villa checked nearly every box, indicating that Plaintiff's illnesses, injuries, or conditions affect his ability to engage in the following activities: lifting; squatting; standing; reaching; walking; sitting; kneeling; stair climbing; memory; completing tasks; concentration; understanding; following instructions; using hands; and getting along with others.  (A.R. 111.)  However, no doctor has assessed limitations involving all of the boxes checked by Ms Villa.  Indeed, the ALJ made no step two finding of any mental impairment that would interfere with Plaintiff's memory and/or ability to complete tasks, concentrate, understand, and follow instructions, as indicated by Ms. Villa.  As a substantial portion of Ms. Villa's statements are not related to any determined impairment, and fail to describe competently her observations of Plaintiff's symptoms that may affect his ability to

work, the probative value of Ms. Villa's statements is questionable, at best. *See* Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)(friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify as to his condition); *see also* Lewis, 236 F.3d at 511 (ALJ may discount lay witness testimony that conflicts with the medical evidence); *see also* Ukolov v. Barnhart, 420 F.3d 1002, 1006 n.6. (9th Cir. 2005)(in which the Ninth Circuit states that the failure of the ALJ to adequately address the testimony of lay witnesses about the symptoms of a claimed impairment properly found not severe at step two is of no moment).

Accordingly, Ms. Villa's statements are not competent evidence to establish and/or corroborate the existence of an impairment and, thus, are irrelevant. As there was no basis for considering these statements, the ALJ was not required to specifically address the statements or proffer reasons for rejecting them. His failure to do so was not error.

**III. Until The Record Has Been Developed And The ALJ Has Assessed Properly The Opinion Of Plaintiff's Treating Physician, The Court Cannot Assess The Adequacy Of The Hypothetical Posed To The Vocational Expert.**

In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations. Embrey v. Bowen, 849 F.2d 418, 422-24 (9th Cir. 1988). In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." Andrews, 53 F.3d at 1044. However, the ALJ is not required to include

11

limitations for which there was no evidence.  *See* Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Here, the hypothetical *may* be incomplete to the extent that it does not reflect appropriately, in whole or in part, Plaintiff's limitations and attendant work restrictions as established by his treating physician, Dr. Ahmed.  On remand, the ALJ should clarify and further develop the record regarding Dr. Ahmed's opinion, and should properly accept or reject his opinion in accordance with the appropriate legal standards, or the ALJ must incorporate Plaintiff's limitations, as established by Dr. Ahmed, into the hypothetical posed to the vocational expert.

**IV.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179. ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

The ALJ's conclusion that Plaintiff does not have a "severe" mental impairment was not raised as an issue by the parties. However, the ALJ did find, based on the opinion of the State Agency review psychiatrist that, Plaintiff "may have a depressive disorder, not otherwise specified," and may be "mildly impaired." (A.R. 24.) Further, the ALJ concluded that Plaintiff's depressive disorder results in a "mild limitation in: activities of daily living; maintaining social functioning; and maintaining concentration, persistence, and pace." (A.R. 25.) On remand, the ALJ must consider the impact of all of Plaintiff's impairments, whether severe or not, on his ability to engage in and sustain full-time work.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

///
///
///
///

13

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 25, 2009

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE